# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 18-1477V
UNPUBLISHED

| | |
|---|---|
| PAUL CHRISTENSEN,<br><br>               Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>               Respondent. | Chief Special Master Corcoran<br><br>Filed: May 12, 2021<br><br>Special Processing Unit (SPU);<br>Findings of Fact; Onset; Influenza<br>(Flu) Vaccine; Shoulder Injury<br>Related to Vaccine Administration<br>(SIRVA) |

*Amy A. Senerth*, Muller Brazil, LLP, Dresher, PA, for Petitioner.

*Adriana Ruth Teitel*, U.S. Department of Justice, Washington, DC, for respondent.

### DECISION GRANTING MOTION TO DISMISS[1]

On September 26, 2018, Paul Christensen filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"), alleging that he suffered a shoulder injury related to vaccine administration ("SIRVA"). Petition at 1. The Petition specifically alleges that Petitioner received a flu vaccine on October 17, 2013 and felt pain in his left shoulder one day later. *Id.*

Petitioner's claim was filed over three years after the alleged onset date, and therefore is literally untimely under the Vaccine Act's 36-month statute of limitations. Section 16(a)(2). Relying on this, along with his determination that the claim (which arose

---

[1] Although I have not formally designated this Decision for publication, I am required to post it on the United States Court of Federal Claims' website because it contains a reasoned explanation for the action in this case, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

under a Table amendment) was not protected by the Act's "lookback" provision (Section 16(b)(1) & (2)), Respondent has requested the case's dismissal. Motion dated December 13, 2019, ECF No. 25. Petitioner opposes the motion, arguing that Petitioner in fact suffered a Table SIRVA. Petitioner's Response in Opposition to Respondent's Motion to Dismiss (ECF No. 26) ("Opp.") at 6-9.

Now, having considered both the motion and Petitioner's response as well as the medical records filed in this case, I find that there is not preponderant evidence that Petitioner suffered a Table SIRVA. And because the claim does not meet the Table requirements for a flu vaccine/SIRVA claim, its untimeliness is not saved by the lookback provision, and it should therefore be dismissed.

### I. Factual Background

Petitioner received a flu vaccine in his left shoulder on October 17, 2013. Ex. 1 at 1. Petitioner first complained of shoulder pain on November 11, 2013, to Nancy Sullivan, DNP, over three weeks later. Ex. 2 at 27. At that time, Petitioner stated his pain began "about 5 weeks ago following a two week road trip where he was the primary driver and sat with his arm on the window sill of the car for several hours at a time." Ex. 2 at 27. Five weeks from November 11th would have been prior to vaccination. Petitioner stated he felt pain most days, but had not taken any steps on his own, and bench pressing did not bother it. *Id.* The impression was "pain in mid deltoid likely second to impingement on bursa or supraspinatus tendon versus unlikely rotator cuff tear." *Id.* at 28.

Petitioner next sought care on December 5, 2013, for shoulder pain and reduced range of motion. Ex. 2 at 26. Again, Petitioner stated his pain "began after driving long distances for two weeks." *Id.* Petitioner reported that he continued to go to the gym, and certain movements "really exacerbate it like overhead presses, and abduction." The pain was located in the outer shoulder. On December 30, 2013, Petitioner returned for a steroid injection to help with his shoulder discomfort. Ex. 2 at 23. The records indicate the injection was for left shoulder impingement syndrome and supraspinatus bursitis. *Id.*

Petitioner saw Dr. David Badger, an orthopedic doctor at Washington Sports Medicine Associates, on January 30, 2014, for pain and stiffness in his left shoulder. Ex. 3 at 13. Petitioner reported the pain started suddenly three months earlier and that he "woke up with pain the day after he had a flu shot in that same arm…." *Id.* This was the first record referral to the vaccine as related to Petitioner's pain. He also reported that his pain was aggravated by exercise and lifting. *Id.* He was diagnosed with impingement. In a separate Blue Cross "Incident Questionnaire" Petitioner stated that "this seems to have been caused as a side effect of flu vaccination." Ex. 12 at 15. He also stated that his primary doctor "diagnosed bursitis, seems to have been caused by flu shot." Ex. 12 at 19.

An MRI on January 31, 2014, revealed arthritis but no significant mass effect on the underlying rotator cuff. Ex. 3 at 16. The findings were suspicious of a labral tear, but there was no evidence of bursitis. *Id.*

On February 10, 2014, Petitioner returned to Washington Sports Medicine Associates for continued shoulder pain and elected to proceed with surgical intervention. Ex. 3 at 11. Petitioner underwent left shoulder diagnostic arthroscopy on February 19, 2014. Ex. 3 at 17-18. The surgical notes indicated there was no labral tear, but a partial rotator cuff tear that extended along the supraspinatus tendon, a small tear in his subscapularis, and scuffing on the bursal side of the rotator cuff tendons. The procedure included debridement, bursectomy, and subacromial decompression. *Id.*

The initial physical therapy appointment on March 12, 2014, stated that Petitioner had a flu shot in October and had "bursitis afterwards…. Saw Dr. Badger and had MRI and found bursitis and bone spurs." Ex. 4 at 2.[3] On April 17, 2014, Petitioner returned to his primary physician and stated that he "went to ortho … and was eventually diagnosed with a rotator cuff tear due to anatomic impingement of dow[n]-turned acromion, and had beginning of frozen shoulder." Ex. 2 at 21.

Over a year later, on May 20, 2015, Petitioner saw Dr. Badger who reported that he was 80% improved and could return for follow-up as needed. Ex. 3 at 1-2. Petitioner next saw an orthopedist on November 9, 2017, for right shoulder pain following a flu vaccination. Ex. 10 at 12.

In addition to the medical records, Petitioner submitted an affidavit and social media posts purportedly from October 16, 2013, through June 14, 2014. The completeness of these posts is unclear, as certain entries appear to be cut off. *See, e.g.*, post from Oct. 16, 2013 at 7:44 AM (missing a heading and possibly additional text); post from Oct. 17, 2013, 2:21 PM (update missing all text); post from Oct. 24, 2013, 1:48 PM (text of post is cut off and may be incomplete). Despite the potentially-incomplete aspect of the records, they are helpful. For example, on October 28, 2013, Petitioner posted "WebMD officially sucks. Some time back I strained my shoulder, don't know how. My flu shot a couple of weeks ago aggravated it pretty bad. Ran my symptoms through WebMD, and the only possible result that came up was shingles." Ex. 13 at 300.

---

[3] This description is incorrect, as the MRI revealed "no evidence of bursitis." Ex. 3 at 16.

## II. Procedural History

This case was initiated on September 26, 2018. ECF No. 1. Following the initial status conference on May 13, 2019, Petitioner was ordered to file additional records including records for the three-year period before his vaccination and an amended statement of completion. Scheduling Order dated November 29, 2018, ECF No. 7. Petitioner filed additional records on March 5, March 8, April 18, and April 30 of 2019, and a statement of completion April 30, 2019. ECF Nos. 10, 11, 13, 15, 16.

On March 10, 2020, Respondent stated that he intended to defend this case, and proposed filing a Rule 4(c) Report. ECF No. 24. Respondent filed that report on December 13, 2019, arguing that Petitioner failed to establish a Table claim because the records show his pain started before he received his flu vaccine. ECF No. 24, Respondent's Rule 4(c) Report ("Resp. Report"), at 5-6. Given the above, Respondent argued that the Petition should be dismissed because Mr. Christensen could not otherwise maintain an off-Table, causation-in-fact claim using the "lookback" provision of the Vaccine Act. *Id.* at 6-7. Accompanying the Rule 4(c) Report was a motion seeking the claim's dismissal. ECF No. 25.

Petitioner opposed the request for dismissal on January 22, 2020, asserting that he did suffer a Table claim. Opp. at 1. Thereafter, Petitioner filed additional records including social media posts on February 10, 2020 (ECF No. 28); an updated affidavit on May 11, 2020 (ECF No. 31); insurance claim summaries on June 9, 2020 (ECF No. 33); outstanding medical records on June 25 and June 30, 2020 (ECF Nos. 34, 36) and an amended statement of completion on July 6, 2020. ECF No. 37.

## III. Ruling on the Record v. Summary Judgment

A threshold issue raised by Petitioner is whether it is appropriate for me to resolve this matter summarily – and if so, what legal standard should apply.

In his brief, Petitioner contends that Respondent's motion should be treated as a motion for summary judgment, and that summary judgment is only appropriate when the movant shows there is no genuine dispute as to any material fact. Opp. at 5. Focusing on the requirements for summary judgment, Petitioner argues that he has provided "preponderant evidence to create a genuine issue as to whether petitioner's left shoulder pain began within 48 hours of vaccination… and if proven, would permit Petitioner to prevail on the merits on his claim." Opp. at 1.

In Section 12(d) of the Vaccine Act, Congress provided guidance regarding the type of "less-adversarial, expeditious, and informal" proceeding envisioned for the

Vaccine Program. Section 12(d)(2)(A). This guidance was incorporated in the Vaccine Rules. In Vaccine Rule 3, special masters are instructed "to make the proceedings expeditious, flexible, and less adversarial, while at the same time affording each party a full and fair opportunity to present its case and creating a record sufficient to allow review of the special master's decision." Vaccine Rule 3(b)(2). And as explicitly set forth in Vaccine Rule 8, "[t]he special master may decide a case on the basis of written submissions without conducting an evidentiary hearing. Submissions may include a motion for summary judgment, in which event the procedures set forth in RCFC 56 will apply." Vaccine Rule 8(d) (emphasis added). Thus, the fact that special masters may make rulings on the record is a product of the Vaccine Act itself, which envisions efforts to streamline proceedings in order to reach faster determinations in a less adversarial manner (especially where the issues that will govern the case's resolution are narrow or primarily legal in nature).

As the Federal Circuit explained when recently affirming my decision to rule on the written record in a different case, a special master's ability to decide a case based upon written submissions, and without a hearing, is not limited to the context of summary judgment as applied by the federal courts and civil procedure rules. *Kreizenbeck v. Sec'y of Health & Hum. Servs.*, 945 F.3d 1362, 1366 (Fed. Cir. 2020). Rather, "Rule 8(d) contemplates that special masters can decide cases on written submissions other than motions for summary judgment." *Id.* (emphasis in original). As explained in *Kreizenbeck*, special masters may rule on the record after affording the parties "a full and fair opportunity to present its case." *Id.* (citing Vaccine Rule 3(b)(2)). The "special masters must determine that the record is comprehensive and fully developed before ruling on the record." *Id.* at 1366.

In light of the above, Petitioner is incorrect in maintaining that the summary judgment standards govern the resolution of this matter. Accepting this argument would limit the special masters' authority to decide cases based upon written submissions. But in *Kreizenbeck*, the Federal Circuit clearly stated that the special masters' authority is broader, encompassing the ability to rule on the written record without a hearing, under standards distinguishable from those applicable to summary judgment. Rather, I may resolve this case as it stands and on the existing record. The key issue is whether Petitioner has had a full and fair opportunity to offer evidence in support of her claim.

Under the Act, a petitioner must demonstrate by preponderant evidence the requirements for a petition as set forth in Section 11(c)(1). Section 13(a)(1)(A). This case was initiated in September of 2018, and Petitioner has thus had ample time to develop the record before Respondent's December 13, 2019 Rule 4(c) Report and Motion to Dismiss. Further, Petitioner filed additional records after his opposition brief, including

more evidence and an amended statement of completion. It cannot be said that resolution of this matter now, on the basis of the existing record, is depriving Petitioner of the opportunity to prove a matter, since he has been given ample time to do so. Further, Petitioner has made neither a claim that additional time is needed nor representations that outstanding evidence is forthcoming. I therefore find that resolution of the pending motion, based on the authority vested in me as recognized by the Federal Circuit, is appropriate at this time – and I need not be guided by summary judgment fact-finding standards in so doing.

## IV. Analysis of Substantive Issues Raised by Respondent's Motion

### A. Requirements of a Table SIRVA Claim

A petitioner may prevail on a claim if he has "sustained, or endured the significant aggravation of any illness, disability, injury, or condition" set forth in the Vaccine Injury Table (the Table). Section 11(c)(1)(C)(i). The most recent version of the Table, which can be found at Section 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). If petitioner establishes that he has suffered a "Table Injury," causation is presumed.

Finding a petitioner is entitled to compensation must not be "based on the claims of a petitioner alone, unsubstantiated by medical records or by medical opinion." Section 13(a)(1). Further, contemporaneous medical records are presumed to be accurate and complete in their recording of all relevant information as to petitioner's medical issues. *Cucuras v. Sec'y of Health & Human Servs.*, 993, F.2d 1525, 1528 (Fed. Cir. 1993). Testimony offered after the events in questions is considered less reliable than contemporaneous reports because the need for accurate explanation of symptoms is more immediate. *Reusser v. Sec'y of Health & Human Servs.*, 28 Fed. Cl. 516, 523 (1993).

"It must [also] be recognized that the absence of a reference to a condition or circumstance is much less significant than a reference which negates the existence of the condition or circumstance. Since medical records typically record only a fraction of all that occurs, the fact that reference to an event is omitted from the medical records may not be very significant." *Murphy v. Sec'y of Health & Human Servs.*, 23 Cl. Ct. 726, 733 (Fed. Cl. 1991), aff'd, 968 F.2d 1226 (Fed. Cir. 1992). However, in balancing these considerations, special masters in this Program have in most cases declined to credit later testimony over contemporaneous records. *See, e.g., Stevens v. Sec'y of Health & Human Servs.*, No. 90–221V, 1990 WL 608693, at *3 (Cl. Ct. Spec. Mstr. Dec. 21, 1990);

*Vergara v. Sec'y of Health & Human Servs.*, No. 08–882V, 2014 WL 2795491, at *4 (Fed. Cl. Spec. Mstr. July 17, 2014) ("Special Masters frequently accord more weight to contemporaneously-recorded medical symptoms than those recounted in later medical histories, affidavits, or trial testimony."); *see also Cucuras*, 993 F.2d at 1528 (noting that "the Supreme Court counsels that oral testimony in conflict with contemporaneous documentary evidence deserves little weight")).

The requirements for establishing a SIRVA injury are set forth in the Qualification and Aids to Interpretation ("QAI") (42 C.F.R. § 100.3(c)(10)). The criteria are as follows:

> SIRVA manifests as shoulder pain and limited range of motion occurring after the administration of a vaccine intended for intramuscular administration in the upper arm.… A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:
>
> (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;
>
> (ii) Pain occurs within the specified time frame;
>
> (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and
>
> (iv) No other condition or abnormality is present that would explain the patient's symptoms (e.g. NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

*Id.* Petitioner has failed to satisfy at two these four criteria.

### B. Adequacy of Petitioner's Table Claim

Petitioner alleges that he experienced shoulder pain one day after he received his October 17, 2013 flu vaccine. Petition at 1; Ex. 5 at 1. However, the contemporary medical records preponderantly support the conclusion that Petitioner experienced shoulder pain *prior* to his vaccination, as they establish both that he had a history of shoulder pain, and that his pain did not begin within 48 hours of his vaccination.

The medical record from Petitioner's November 11, 2013 visit to Nancy Sullivan, DNP, state that Petitioner's pain began five weeks earlier following a two-week road trip. Ex. 2 at 27. This would put the start of Petitioner's shoulder pain at two weeks before his flu vaccination. Petitioner again stated his shoulder pain began after driving long

distances on December 5, 2013. Ex. 2 at 26. Updates from Petitioner's social media corroborate these early medical records. On October 28, 2013, ten days after his vaccination, Petitioner stated that "[s]ome time back I strained my shoulder" and his flu vaccine "aggravated it pretty bad", further evidence that Petitioner's shoulder pain began before his vaccination. Ex. 13 at 300.

It is not until January 30, 2014, fourteen weeks after his vaccination, that Petitioner first reported his shoulder pain began within 48 hours of his flu vaccine. When Petitioner first saw Dr. Badger he stated his pain began suddenly three months earlier and that he "woke up with pain the day after he had a flu shot…." Ex. 3 at 13. He also reported that his pain "seems to have been caused as a side effect of flu vaccination." Ex. 12 at 15.

Generally, information contained in contemporaneously created medicals records is considered trustworthy because it is provided close in time to the events in question for the purpose of obtaining medical care. *Cucuras*, 993 F.2d at 1528. Thus, even when the information in a record was provided to a treater by a claimant, it is still considered more trustworthy than allegations made at the time a petition is filed, or thereafter. Here, multiple medical records created within three months of vaccination do not refer to Petitioner's shoulder pain occurring within 48 hours of his vaccination, but instead affirmatively state it began earlier. The earliest records also suggest his shoulder pain was not caused by the flu shot, but was due to a long road trip. Petitioner's October 28, 2013 social media supports these facts by stating he previously strained his shoulder and the flu shot "aggravated it".

Further, Petitioner did not mention the flu shot alleged as causal, or identify it as the source of his pain, until several months later. In contrast, the medical records providing some support for Petitioner's current allegation regarding onset were created months after vaccination, and are directly contradicted by more contemporaneous assertions. These later-created medical records are not sufficient to overcome the earlier mention of right shoulder pain that began prior to Petitioner's vaccination and was attributed to an entirely different cause.

Petitioner has failed to provide preponderant evidence that the onset of the left shoulder pain he complained of occurred immediately upon vaccination, as he alleges, or that he had no prior history of shoulder pain such that onset preceded vaccination. As a result, Petitioner cannot proceed with a Table SIRVA claim.

### C. Untimeliness of Claim

In many cases, the fact that a claimant cannot meet a Table definition or requirement does not constitute the end of the case, since the claimant might well be able

to establish a non-Table, causation-in-fact version of the claim not subject to those requirements. Here, for example, Petitioner might be able to show that a preexisting shoulder injury was exacerbated by the flu vaccine (assuming that he could meet the three elements of the test set forth in *Althen v. Sec'y of Health & Human Servs.*, 418 F.3d 1274 (Fed. Cir. 2005)).

But Petitioner's ability to refashion his claim into a non-Table cause of action is not possible under the circumstances, due to the late date the matter was filed. It is not disputed that Petitioner received the flu vaccine on October 17, 2013. Accordingly, to be timely filed under the Vaccine Act's 36-month statute of limitations, the matter should have been filed within three years of onset – meaning mid-October 2016 (assuming an onset of aggravation of his prior shoulder injury at that time), or perhaps as late as November or even December 2016. Section 16(a)(2). But this matter was initiated in *September 2018* – almost five years from even the latest likely onset. The case is thus facially untimely.

In some cases, the Act's "lookback" provision (Section 16(b)) can save certain kinds of otherwise-untimely filed cases. That provision is triggered by a Table revision, and allows petitioners to file a claim that would be untimely within two years of the revision's effective date, based on vaccine-related injuries suffered during the eight years prior to the revision. Section 16(b). Thus, because the Vaccine Table was revised in 2017[4] to include a claim for a SIRVA, the present claim (filed a year after the Table change) could have been deemed timely had it asserted a viable Table claim (since (i) September 2018 is within two years of the Table revision, and (ii) the claim is based on an injury alleged to have been incurred in the fall of 2013 – approximately three and one-half years before the amendment).

I have previously determined, however, that the lookback provision does not save non-Table, causation-in-fact versions of an otherwise-untenable Table claim. *Randolph v. Sec'y of Health & Human Servs.*, No. 18-1231V, 2020 WL 542735, at *8 (Fed. Cl. Spec. Mstr. Jan. 2, 2020) (flu-GBS non-Table claim not saved). Rather, once it is determined that a claim cannot satisfy the Table requirements, the lookback provision no longer applies. My determination is in line with prior decisions from other special masters. *Gorski v. Sec'y of Health & Human Servs.*, No. 97-156V, 1997 WL 739497, at *6 (Fed. Cl. Spec. Mstr. Nov. 13, 1997).

---

[4] Effective for petitions filed beginning on March 21, 2017, SIRVA is an injury listed on the Table. *See* National Vaccine Injury Compensation Program: Revisions to the Vaccine Injury Table, Final Rule, 82 Fed. Reg. 6294 (Jan. 19, 2017); National Vaccine Injury Compensation Program: Revisions to the Vaccine Injury Table, Delay of Effective Date, 82 Fed. Reg. 11321 (Feb. 22, 2017) (delaying the effective date of the final rule until March 21, 2017).

Here, my conclusion that Petitioner cannot preponderantly meet the requirement of a SIRVA Table claim deprives him of the lookback's safe harbor. Because Petitioner filed his case well after the expiration of the Vaccine Act's 36-month statute of limitation, his petition is untimely filed, and thus must be dismissed.

## V. Conclusion

To date, and despite ample opportunity, Petitioner has failed to file preponderant evidence to establish his Table claim, rendering the case untimely. Accordingly, Respondent's Motion to Dismiss is **GRANTED** and this case is **DISMISSED.**

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master